## S. J. Bailey, Plaintiff, v. Harry Eater and Claude Gerrish, Defendants.

### Gen. No. 64–14.

Fifth District.

November 10, 1964.

Frank H. Walker, of Mt. Vernon, for appellant.

Jim D. Keehner, of Alton, for plaintiff-appellee, S. J. Bailey. Hohlt, House and DeMoss, and Don Johnson, of Pinckneyville, for defendant-appellee, Claude Gerrish.

WRIGHT, JUSTICE.

The plaintiff, S. J. Bailey, filed his complaint in the Circuit Court of Perry County alleging that on or about March 25, 1963, he and the defendant, Harry Eater, entered into a written agreement for the sale of a forty acre farm in Perry County, by the defendant to the plaintiff for a consideration of $18,000. The complaint further alleges that subsequent to March 25, 1963, the defendant, Harry Eater, served a notice of rescission of the contract on the plaintiff. It is further alleged that the defendant refused to comply with the terms of the agreement though demand had been made upon him, and that the plaintiff had been damaged in excess of $1,800; that said written agreement provided for $1,800 or ten percent of the agreed sale price as liquidated damages for failure to perform; that plaintiff had fully performed under the contract and asked judgment in the amount of $1,800 and costs against defendant, Harry Eater.

In Count II of the complaint, plaintiff realleges parts of Count I and then alleges that defendant, Claude Gerrish, the real estate agent with whom the property in question was listed, refused to refund to plaintiff the sum of $1,800 paid by plaintiff as initial payment on the agreed sale price of $18,000, and further alleges that plaintiff has performed under the contract and is entitled to a refund of $1,800 and asks judgment against defendant, Claude Gerrish, for that amount.

The defendant, Claude Gerrish, filed a counterclaim against the defendant, Harry Eater, alleging that on or about October 1, 1962, defendant, Harry Eater, and

defendant and counterclaimant, Claude Gerrish, entered into a property listing agreement that Gerrish was to have and receive a ten percent commission for the sale of the forty-acre tract of land in Perry County, Illinois, "when Defendant, Claude Gerrish, would procure a purchaser at any price and terms acceptable to Defendant, Harry Eater." The counterclaim further alleged that defendant and counterclaimant, Claude Gerrish, brought the real estate in question to the attention of plaintiff, S. J. Bailey, on or about March 25, 1963, and S. J. Bailey agreed to purchase said real estate and Harry Eater agreed to sell said real estate for $18,000, and that S. J. Bailey made a deposit of $1,800 on the purchase price, and further alleges that he procured a ready, willing and able buyer for said real estate that defendant, Harry Eater, without fault on the part of the plaintiff, S. J. Bailey, or defendant, Claude Gerrish, refused to sell said real estate and that defendant, Claude Gerrish, is entitled to a commission of $1,800 and prayed judgment for that amount.

The trial court heard the case on September 3, 1963, without a jury and entered judgment on October 5, 1963, against defendant, Harry Eater, and in favor of plaintiff, S. J. Bailey, in the amount of $1,800 and costs, and also entered judgment against the defendant, Harry Eater, and in favor of Claude Gerrish, defendant and counterplaintiff, in the amount of $1,800 and costs. Defendant, Harry Eater, thereafter filed a motion for a new trial which was heard and denied on November 15, 1963. From this judgment, defendant, Harry Eater, appeals.

On October 1, 1962, defendant, Harry Eater, signed a property listing agreement with the United Farm Agency, Claude Gerrish, representative, in Pinckneyville, Perry County, Illinois, listing his forty acre farm located in Perry County for sale at a price of $20,000, one-half down payment to be made and pro-

vided for a ten percent real estate commission and possession to be given within ninety days.

On the 25th of March, 1963, an agreement of sale was drawn by defendant and counterplaintiff, Claude Gerrish, and was signed by S. J. Bailey and Vivian C. Bailey, second party, and later on the evening of that date taken to the home of the defendant, Harry Eater, for the signature of he and his wife, Frances Eater. The agreement as signed on March 25, 1963, provided for a selling price of $18,000 and provided that the deed be delivered on April 25, 1963. Near the beginning of the agreement it was stated: "possession of land on or before 25th of April, 1963" and near the end of the agreement it was stated: "possession to be given on or before the 25 day of May, 1963" and at the request of Eater at the time of the signing of the agreement the word, "May" was changed to "June" and the change was initialed by Eater and his wife, and by Bailey. Subsequent to the purported agreement for sale which was entered into by Bailey and Eater, a dispute arose concerning the date or time on which Bailey was to take possession, Bailey contending that he had a right to take possession of the land on April 25, 1963, and threatened to move his livestock on the land by that date.

On April 17, 1963, the defendant, Harry Eater, sent a notice of rescission to the plaintiff, S. J. Bailey, which stated: "The contract is not what I have been represented it would be; time of the performance of same is different from what I was told it would be. There has not been a complete meeting of minds and I want you to know that I consider the same attempted venture to buy and sell, hence on out at and end, and to not be bound further thereby."

Plaintiff contends that he understood that two possession dates were provided for in the agreement, one

40

for the land on April 25, 1963, and one for the house on June 25, 1963.

The defendant, Harry Eater, contends that it was his understanding, according to the terms of the agreement, that possession of the farm meant both the land and the house and that he was to give possession on June 25, 1963.

Gerrish testified that when he wrote the farm sale agreement that was later signed by the plaintiff and defendant, he understood there were two possession dates, one for the land and a subsequent possession date for the house. Plaintiff Bailey testified that it was his understanding that he was to have possession of the land on April 25, 1963, and possession of the house on June 25, 1963, and the defendant, Harry Eater, testified that it was his understanding that he was to keep possession of the land and buildings until June 25th, and that the reason the date was changed from May 25th to June 25th in the contract was because it was necessary for him to have a sale and dispose of his livestock before he could give possession of the farm.

It is clear that the sale agreement called for possession on June 25, 1963, and in this provision for possession no distinction was made between possession of the land and possession of the house. In another place in the contract, it was stated that possession of the land was to be given April 25, 1963. It is evident from the record in this case that there was not a meeting of minds between plaintiff, Bailey, and defendant, Eater, and that Gerrish, the real estate agent and go-between, was not able to work out an understanding between the parties as to the date of possession. It was apparently plaintiff's understanding that he was to have possession of the land on April 25, 1963, and possession of the house located on the land on June

25, 1963, and it was apparently defendant Eater's understanding that "possession of land" and "possession" as used in the contract meant possession of all of the real estate, including land and buildings, and that plaintiff, Bailey, was not to have possession of the land or buildings until June 25, 1963, hence there was no mutual assent or meeting of minds between the parties.

The law is well settled that in order for a contract to come into being, there must be a meeting of minds of the parties to the contract. Maloney v. Crest Finance Co., 39 Ill App2d 378, 188 NE2d 739; Calo, Inc. v. AMF Pinspotters, Inc., 31 Ill App2d 2, 176 NE2d 1; Toto v. Durand & Kasper Co., 214 Ill App 449. We believe the rule to be well stated in ILP, Vol 12, Contracts, Section 31, as follows:

> "One of the essential elements for the formation of a contract, other than a contract implied in law or quasi contract, is a manifestation of assent by the parties to the terms thereof. It is essential that both parties assent to the same thing in the same sense and that their minds meet on the essential terms and conditions."

The date on which possession of real estate is to be given by the seller is unquestionably an essential element of a real estate sales contract and the contract should be so drawn and the agreement consummated so there can be no question as to the date on which possession of the real estate is to be given to the purchaser. We conclude from all of the evidence in the record and the circumstances in the instant case that there was not a meeting of minds of the defendant, Eater, the seller, and the plaintiff, Bailey, the purchaser, as to the date on which possession of the real estate here in question, including lands and

buildings, was to be turned over to the purchaser, Bailey.

The judgment of the Circuit Court of Perry County is reversed.

Judgment reversed.

DOVE, P. J. and REYNOLDS, J., concur.